[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12488

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2010
JOHN LEY
CLERK

Agency No. A076-415-457

MICHAELLE LAPAIX,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 12, 2010)

Before PRYOR and FAY, Circuit Judges, and QUIST,[*] District Judge.

PER CURIAM:

---

[*] Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

Petitioner Michaelle Lapaix seeks review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying her applications for asylum and withholding of removal. Lapaix also seeks review of the BIA's decision that she waived her claims for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). We find that Lapaix has not presented any reversible error and deny her petition for review.

## I. FACTS AND PROCEEDINGS

Lapaix, a citizen of Haiti, entered the United States in March 1992. In March 1998, she filed an application for asylum and withholding of removal. According to her application, Lapaix was raped and beaten by non-governmental political vigilantes on two separate occasions because of her involvement in political organizations. In February 2005, an IJ granted Lapaix's application for asylum. The IJ found that Lapaix had been persecuted on account of her political opinion, which created the presumption of a well-founded fear of future persecution that the government failed to rebut. Because she was granted asylum, the IJ did not consider her claims for withholding of removal and protection under the CAT.

At the time she was granted asylum, Lapaix was facing a charge of aggravated battery, a second degree felony.[1] The charge stemmed from a July 2004 incident in which Lapaix stabbed her landlord in the forearm twice with a kitchen knife, hit her with a closed fist and took the phone away from the victim as she attempted to call 911. Lapaix then fled the scene, stating that she was "going to jail." Lapaix pled no contest in May 2005, and was sentenced to eight years probation and ordered to complete a sixteen week anger management course, stay away from the victim and pay restitution in the amount of $6,697.36.

In February 2006, the Department of Homeland Security moved to reopen Lapaix's asylum case on the basis of her conviction. An IJ reopened the case in March 2006. The issue presented was whether an aggravated battery constituted a "particularly serious crime" under the Immigration and Nationality Act, which would void Lapaix's asylum status.[2]

---

[1] (1)(a) A person commits aggravated battery who, in committing battery: . . . 2. Uses a deadly weapon. . . . (2) Whoever commits aggravated battery shall be guilty of a felony of the second degree. Fla. Stat. §784.045

[2] Particularly serious crimes render aliens ineligible for asylum and withholding of removal. An alien may not receive asylum if she, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. 1158 § (b)(2)(A)(ii). Like asylum, withholding of removal is not available to an alien if she, "having been convicted by a final judgment of a particular serious crime is a danger to the community of the United States." 8 U.S.C. 1231§ (b)(3)(B)(ii). Conviction of a particularly serious crime necessarily renders one a danger to the community. *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1222 (11th Cir. 1985).

Lapaix's initial brief stated that, "if it becomes necessary to consider the events as dictated in the police report, Ms. Lapaix would request the opportunity to give testimony, or to provide a sworn statement." At the hearing, Lapaix asserted that there was nothing on the record from her perspective and, although it was inappropriate for counsel to fill in those facts, the situation was more complex than suggested. Lapaix's counsel stated, "it's not as simple as the victim having been strapped [sic] with a knife that [Lapaix] carried on her person. In fact there was a table knife that [Lapaix] was using in her own room when her landlord came into the room."

Lapaix further contended that police reports are unreliable sources of evidence. The IJ agreed, but stated that "even if we take the police report out of it, we're still left with a serious felony conviction involving a crime against another person with a weapon." When Lapaix replied that the weapon was a table knife, the IJ noted that "a table knife is still a deadly weapon." At the conclusion of the proceeding, the IJ asked if either party had anything else to add. Lapaix chose not to offer any additional testimony, evidence or argument.

The IJ took the matter under consideration and issued a written decision in February 2008. The IJ denied Lapaix's application for asylum, withholding of removal and CAT relief. The IJ found Lapaix ineligible for asylum and withholding of removal because she had been convicted by a final judgment of a

4

particularly serious crime. The IJ reasoned that, "due to the nature and the circumstances of the respondent's offense and to the lengthy term of probation imposed and restitution ordered that the respondent was convicted of a particularly serious crime."

With regard to CAT relief, the IJ noted that Haiti's political conditions had changed since Lapaix left. The IJ stated that, although Lapaix was tortured in the past, "[she] has not demonstrated that she will be singled out and tortured upon her removal to Haiti. There is nothing in the record to indicate that the current government in Haiti would have any inclination to harm [her]." Therefore, the IJ found that the evidence did not support Lapaix's claim for CAT relief.

Lapaix filed a timely notice of appeal with the BIA. The BIA dismissed Lapaix's appeal, finding that her offense constituted a particularly serious crime given its violent nature against a person. The BIA held that there was no reason to remand because the IJ's decision was supported by the record. Additionally, the BIA found that Lapaix did not dispute the IJ's denial of CAT relief and as such, waived any appeal as to that finding.

Lapaix now petitions this court for review of the BIA's decision. Lapaix presents two issues on appeal. First, Lapaix claims that the IJ violated her due process rights by refusing to permit her to testify at her evidentiary hearing regarding the circumstances of the crime in question. Second, Lapaix asserts that

5

the BIA erred in refusing to consider her CAT claim, which she alleges was sufficiently raised in her brief to the BIA.

## II. STANDARD OF REVIEW

This court reviews only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review constitutional challenges, including alleged due process violations, *de novo*. *See Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341 (11th Cir. 2003).

Lapaix's claim that the BIA erred in refusing to consider her CAT claim presents a more complex issue. Under the applicable regulations, in order to avoid summary dismissal, the applicant's Notice of Appeal or any attachments thereto must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged. *See* 8 C.F.R. § 1003.3(b). If not, then the BIA may grant summary dismissal pursuant to 8 C.F.R. § 1003.1(d)(2)(i). Specifically, the code vests discretion in the BIA to summarily dismiss any part of an appeal where there has been an affirmative waiver of the right to appeal that is clear from the record. *See* 8 C.F.R. § 1003.1(d)(2)(i)(G).

Previously, we reviewed the BIA's summary dismissal of an appeal to determine if the dismissal was "appropriate," without articulating the precise standard of review. *See Bayro v. Reno*, 142 F.3d 1377, 1379 (11th Cir. 1998);

6

*Bonne-Annee v. INS*, 810 F.2d 1077, 1078 (11th Cir. 1987) (per curiam).

However, in *Esponda v. U.S. Att'y Gen.*, we held that because the regulation

indicates the BIA "may" summarily dismiss an appeal, it vests discretion in the

BIA. 453 F.3d 1319, 1321 (11th Cir. 2006). Because the regulations grant the

BIA discretion, *Esponda* determined that the appropriate standard of review for the

BIA's application of the regulation to summarily dismiss an appeal is abuse of that

discretion. *See id.* Accordingly, we review the BIA's determination that Lapaix

failed to raise her CAT claim on appeal for abuse of discretion.

### III. DISCUSSION

**<u>Due Process Violation</u>**

It is well-established that the Fifth Amendment entitles petitioners in

removal proceedings to due process of the law. *See French v. U.S. Att'y Gen.*, 491

F.3d 1277, 1281 (11th Cir. 2007). Due process requires that aliens be given notice

and an opportunity to be heard in their removal proceedings. *See Tang v. U.S.*

*Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009). To establish a due process

violation, the petitioner must show that she was deprived of liberty without due

process of law and that the purported errors caused her substantial prejudice. *See*

*id.* To show substantial prejudice, an alien must demonstrate that, in the absence

of the alleged violations, the outcome of the proceeding would have been different.

*See Ibrahim v. I.N.S.*, 821 F.2d 1547, 1550 (11th Cir. 1987).

7

When the offense in question is not a per se particularly serious crime, the Attorney General retains discretion to determine on a case-by-case basis whether the offense constituted a particularly serious crime. *See In re N-A-M-,* 24 I. & N. Dec. 336, 338 (BIA 2007). That discretion may be delegated to other administrative bodies, including IJ's. *See Zardui-Quintana v. Richard*, 768 F.2d 1213, 1221 (11th Cir. 1985).

In making that determination, the IJ is free to rely solely on the elements of the offense. *See In re N-A-M-,* 24 I. & N. Dec. at 342 ("On some occasions, we have focused exclusively on the elements of the offense, i.e. the nature of the crime."). However, IJ's generally consider additional evidence and look "to such factors as the nature of the conviction, the circumstances of the underlying facts of the conviction, [and] the type of sentence imposed." *Matter of Frentescu,* 18 I. & N. Dec. 244, 247 (BIA 1982), *superseded in part by amendment to* 8 U.S.C. § 1253(h)(2), *as recognized in Matter of C-*, 20 I. & N. Dec. 529, 533 (BIA 1992).

Lapaix asserts that the IJ violated her due process rights because he considered evidence beyond the mere elements of the offense without hearing her testimony regarding the incident. She contends that the IJ must have considered additional evidence because his opinion referenced the "nature and the circumstances" of the incident. Lapaix alleges that when the IJ considered circumstances beyond the mere elements of the offense, he opened the door to

8

considering all relevant information regarding the charge. In support of her argument, Lapaix quotes *In re N-A-M-,* 24 I. & N. Dec. at 344:

> It has been [the BIA's] practice to allow both parties to explain and introduce evidence as to why a crime is particularly serious or not. We see no reason to exclude otherwise reliable information from consideration in an analysis of a particularly serious crime once the nature of the crime, as measured by its elements, brings it within the range of a "particularly serious" offense.

Arguing that her testimony constituted relevant information regarding the charge, Lapaix claims that the IJ's refusal to hear that testimony violated her rights. She further contends that this violation had the potential to affect the outcome of her case, as she would have provided mitigating information which could have changed the IJ's characterization of the crime.

The government responds that Lapaix has not established that the IJ or the BIA violated her due process rights because she failed to show that she suffered substantial prejudice that would have changed the outcome of the proceedings. The government asserts that, although the IJ considered a proffer by Lapaix's counsel that she had used a table knife against her landlord after the landlord had entered her apartment, the IJ did not find that this information negated the violent and particularly serious nature of her crime. The government references the IJ's oral statement that even without the police report, Lapaix still has a conviction for aggravated battery on her record.

9

After reviewing the record, we find that Lapaix was not denied an opportunity to present her case. The IJ was candid about his opinion. Lapaix was given the opportunity to testify or offer any evidence she or her counsel might have thought could have persuaded the IJ otherwise. Nothing new was argued or presented to the IJ or to the BIA. The decision of what evidence to present is one to be made by the petitioner with the advice of counsel, when represented by such. At no point did the IJ refuse to hear admissible testimony and the record fully supports the denial of relief.

Additionally, Lapaix has not demonstrated how the proceedings would have been different had she testified. Lapaix's counsel proffered the basic facts of her case, which put the IJ on notice to the content of Lapaix's potential testimony. Counsel noted that the crime took place in Lapaix's home and she used a table knife to stab her victim. The IJ acknowledged counsel's version of events, but noted that a table knife is still a deadly weapon and that Lapaix had "a serious felony conviction involving a crime against another person with a weapon." Lapaix has offered no explanation as to how aggravated battery with a deadly weapon is not a particularly serious crime.

**Waiver of CAT Relief**

The BIA has discretion to summarily dismiss claims where the record clearly indicates that the applicant has waived her right to appeal. *See* 8 C.F.R. §

10

1003.1(d)(2)(i)(G); *Esponda*, 453 F.3d at 1321. In *Abdi v. U.S. Att'y Gen.*, we stated that abuse of discretion review "is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." 430 F.3d 1148, 1149 (11th Cir. 2005). The BIA exercised its discretion by determining that Lapaix failed to challenge the IJ's denial of her claim for CAT relief. Therefore, the issue before us is whether the BIA acted arbitrarily or capriciously in making that determination.

In order to avoid a wavier of appeal, the applicant's Notice of Appeal or any attachments thereto must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged. *See* 8 C.F.R. § 1003.3(b). Generally, when an appellant fails to offer argument on an issue, that issue is deemed abandoned. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Passing references to issues are insufficient to raise a claim for appeal. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989). We recognize, however, that a claim may remain viable if the core issue is maintained regardless of labels. *See Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 n.3 (11th Cir. 2008).

Lapaix admits that she confused the IJ's analysis as supporting the denial of asylum instead of CAT relief. As such, she only specifically appealed the IJ's

asylum ruling. However, Lapaix argues that her actions were sufficient to provide the BIA notice of her claim and therefore preserve the issue for appeal.

On the first page of her brief to the BIA, Lapaix stated that she was "submitting the following brief in support of her appeal of the decision of the [IJ] denying her application for Asylum and Withholding of Removal and Convention Against Torture." Additionally, Lapaix argues that she implicitly appealed her CAT claim when she challenged the IJ's determination regarding Haiti's current political condition. Lapaix asserts that because the IJ used Haiti's current political condition to determine CAT status, challenge of those facts on appeal should put the government on notice that Lapaix was appealing her CAT claim. Lapaix contends the overlap in facts, coupled with the reference to CAT on the first page of her brief are sufficient to preserve her CAT claim.

While Lapaix specifically mentioned her CAT claim in the first page of her brief, she failed to present any further arguments, assertions, law or statements regarding CAT relief. The entire brief focused solely on Lapaix's claim for asylum and status as an asylee. Notably, the burden of proof for an alien seeking CAT protection is higher than the burden for showing eligibility for asylum. *See Al Najjar*, 257 F.3d at 1303. Therefore, an appeal of an IJ's asylum determination does not necessarily appeal his decision regarding CAT relief.

In order to prevail on a claim for CAT relief, an alien must demonstrate it is more likely than not that she will be subjected to pain and suffering at the hands or acquiescence of the government. *See Reyes-Sanchez* v. *U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). Government acquiescence is the key distinguishing factor between a CAT and asylum claim. *See Rodriguez Morales v. U.S. Att'y Gen.,* 488 F.3d 884, 891 (11th Cir. 2007).

In her brief to the BIA, Lapaix focuses solely on the potential "persecution perpetrated by non-governmental forces." There is no allegation of persecution at the hands of the government, nor any allegation of government acquiescence to outside forces. Lapaix's failure to mention the key distinguishing characteristic of a CAT claim undercuts her argument that she maintained the core issues of her claim for CAT relief or put the government on notice as to the content of her claim.

Therefore, we find that the BIA did not abuse its discretion in determinating that Lapaix failed to appeal the IJ's ruling regarding CAT relief. Accordingly, Lapaix has presented no reversible error.

## IV. CONCLUSION

For the foregoing reasons, Lapaix's petition is denied,

PETITION DENIED.